Whaley, Chief Justice,
delivered the opinion of the court:
By a contract with the Veterans’ Administration the plaintiffs undertook the construction of a hospital building at Bath, New York. It was an undertaking involving a consideration of $741,800.
The major claim is for excess costs, arising through an allegedly unwarranted prolongation of the time of performance.
Performance was in fact delayed because of difficulties encountered in driving satisfactory piling for the foundations. Actual driving of the piles uncovered subsurface conditions not hitherto known. The specifications described the type of pile to be used, and the routine of driving the pile. The specified pile was not suitable throughout the area for the underground conditions met with. In many *109 instances another type of pile was substituted by the defendant’s order. The conditions varied, giving rise to variations in type of pile and the installation of it in the ground. The footage of the piles was materially reduced— they were shorter than planned — and this reduced the estimated price for the pile-driving.
These difficulties delayed the work and affected the plaintiffs’ costs. Negotiations were undertaken between the parties looking to a financial settlement for the pile driving. They agreed upon $5,597.03 and an extension of contract time by 75 days. The defendant insisted upon, and the plaintiffs in writing gave the assurance: “It is understood and agreed that this proposal [$5,597.03 and 75 days’ extension] is to supersede all other proposals and is the basis for the settlement of this matter in its entirety.” The plaintiffs had been claiming “additional costs on the entire contract” due to the changed subsoil conditions. Claims had been submitted by them for sums less than $5,597.03 and less than 75 days’ extension, but they asserted in addition a right to damages for the delay incident to the changes in piling.
The formal order embodying the change in piles and their method of placement, increased the contract price by $5,597.03, and extended the contract time for performance by 75 calendar days. This order was accepted by the plaintiffs as “the basis for the settlement of this matter in its entirety.” It is immaterial that the 75 additional days so granted may not have been the precise period of delayed completion. In granting this extension the contracting officer was entitled to take into consideration the human factors of diligence and dilatoriness and other relevant matters. The change order in fact does not find that completion of the contract was delayed by 75 days. It merely extends the time of performance by that many days.
A change in work may increase or decrease the period of performance. Here it did increase the period of performance and plaintiffs have been compensated therefor under the procedure authorized by the agreement they entered into. They are not entitled to more.
*110 We have here no actionable breach of contract, and whatever extra expense the plaintiffs incurred must be held to have been covered by the increase in contract price and time, and the acceptance thereof as a settlement of the matter in its “entirety.” The word “entirety” is not a word of limitation and may not be so construed as to keep the claim alive.
In addition to indirect labor costs includible in field overhead, the plaintiff's claim an increase in cost of direct labor on concrete structure, due to the lengthening out of the period of performance, caused by the difficulties in attaining satisfactory piling. But the adjustments necessary to be made to meet unforeseen subsoil conditions, were no breach of the contract. They were authorized by the contract. They were made and they were paid for. There was nowhere a warranty by the defendant that its changes in the contract work would be so fitted into seasonal conditions as to permit the plaintiffs to conclude their concrete work before winter set in. Authorized changes increasing work may increase the necessary time to perform the work. This was a simple fact, easily understood by both parties when they entered into their contract.
Shifting of the period of performance may project what would otherwise be summer work into the winter, winter into the summer, dry weather into rainy weather, and vice versa. But if the shifting is due to authorized changes, the shifting itself is authorized and cannot be considered a breach.
The plaintiffs claim the extra expense of making connections with defendant’s plant for temporary heat, due to the plastering being thrown into winter weather, another consequence of the delay in pile driving. It follows from what has been said that this item cannot form the basis of a recovery.
Nor can recovery be had for retardation of the work due to extension of performance into rainy weather, also flowing from the initial delay in the driving of piles. As has been said, the change made in the pile driving, due to unforeseen subsoil conditions, is not a breach, but authorized by the very terms of the contract.
*111 The plaintiffs are entitled to their damages due to failure of the defendant to furnish agreed temporary heat for painting, varnishing, floor tile setting, and related interior work. Here was an unfulfilled obligation of the defendant, and the plaintiffs may recover their overhead for the delay period of 13 calendar days. See Finding No. 39. Field overhead for 13 days at the rate of $38,834 per day (see Finding No. 44) is $504.84, which is recoverable.
The evidence is not sufficient to establish with mathematical accuracy an apportionment of general office overhead to this period of 13 days’ delay. It is found, however, that the sum of $325.00 is apportionable from general office overhead to this 13 days’ delay on this particular contract of the plaintiffs, and this is added to the amount of recoverable field overhead of $504.84, making a total of $829.84.
Plaintiffs are entitled to recover $829.84. It is so ordered.
MaddeN, Judge; WhitakeR, Judge; and LittjjstoN, Judge, concur.
Jones, Judge, took no part in the decision of this case.